**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
THE TRAVELERS INDEMNITY
COMPANY OF AMERICA,

                Plaintiff,

        - against -

SOUTHERN GASTRONOM CORP.,
d/b/a SOUTHERN DELI AND THE
ESTATE OF YURI ZEYGERMAKHER,
Decedent, by his Administrator, ELIJAH
SIDON AND ELIJAH SIDON, individually,

                Defendants.

-----------------------------------------------------X

**REPORT & RECOMMENDATION**

06-CV-5536 (SLT) (RER)

**RAMON E. REYES, JR., Magistrate Judge:**

        Plaintiff The Travelers Indemnity Company of America ("Travelers") brought this action

seeking a declaratory judgment that it has no obligation either to defend or indemnify Defendant

Southern Gastronom Corp. d/b/a Southern Deli ("Southern Deli") under the terms of a

commercial general liability insurance policy (the "Policy") with respect to a $1.7 million default

judgment entered against Southern Deli in favor of the Estate of Yuri Zeygermakher (the

"Zeygermakher Lawsuit").  Default judgment was entered in favor of Defendant Elijah Sidon,

individually and as Administrator of the Estate of Yuri Zeygermakher ("Sidon"), pursuant to

which Sidon seeks to compel Travelers, as Southern Deli's insurer, to pay the unsatisfied

judgment under New York Insurance Law §3420(a)(2)'s enforcement provisions.

        Travelers has moved for summary judgment, arguing that both Southern Deli's and

Sidon's failure to timely notify Travelers of the occurrence that resulted in Zeygermakher's

death vitiates coverage under the policy.  Moreover, Travelers contends that the declination

letters it sent to both Southern Deli and Sidon subsequent to its determination that coverage was

unavailable were both timely and effective. Sidon has cross-moved for summary judgment, arguing that Travelers' failure to comply with the time and specificity requirements for valid disclaimer contained in New York Insurance Law § 3420(d) precludes Travelers from denying coverage to Southern Deli. Alternatively, Sidon argues that the merits of Travelers' disclaimer need not be reached, as Travelers was effectively prevented from disclaiming by way of Insurance Law § 3420(d), as well as the common law doctrines of waiver and estoppel.

For the reasons that follow, I respectfully recommend that Travelers' motion for summary judgment be granted, and Sidon's cross-motion for summary judgment be denied.

## FACTUAL BACKGROUND[1]

Travelers is an insurance company providing insurance coverage and related services to corporations and individuals. (Plaintiff's Local Rule 56.1 Statement of Uncontested Material Facts ("Pl. 56.1 Stmt.") ¶ 6). On September 11, 2003, Southern Deli was a named insured of Travelers under a commercial general liability insurance policy issued to it by Travelers. (Pl. 56.1 Stmt. ¶ 7). On that date, Zeygermakher was injured when he fell into the open sidewalk entrance to Southern Deli's basement. (Pl. 56.1 Stmt. ¶ 8; Defendants' Local Rule 56.1 Statement of Uncontested Material Facts ("Def. 56.1 Stmt.") ¶ 2). Immediately after the accident, Zeygermakher was observed prone at the foot of the basement stairs, and was ultimately removed by paramedics, who placed him on a stretcher and transported him from the scene by ambulance. (Pl. 56.1 Stmt. ¶ 9). On May 11, 2004, some eight months after his accident, Zeygermakher died. (Pl. 56.1 Stmt. ¶ 10; Def. 56.1 Stmt. ¶ 3).

---

[1] Unless otherwise indicated, the following facts are undisputed, and are taken from the parties' respective Local Rule 56.1 Statements of Uncontested Material Facts.

On or about October 7, 2004, Sidon, as the Administrator of the Zeygermakher estate, commenced a personal injury lawsuit against Southern Deli and Arvik Properties, Southern Deli's landlord. (Pl. 56.1 Stmt. ¶ 11; Def. 56.1 Stmt. ¶ 8). Southern Deli was served with process on or about October 12, 2004, which it subsequently forwarded to Travelers on or about October 14, 2004. (Pl. 56.1 Stmt. ¶ 12; Def. 56.1 Stmt. ¶ 11). Prior to Travelers' receipt of process from Southern Deli, Travelers had received no notice of the accident's occurrence. (Pl. 56.1 Stmt. ¶ 13; Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp. Mem.") at 6).

Upon receiving notice of the lawsuit from Southern Deli, Travelers undertook a prompt investigation into the facts and circumstances surrounding Zeygermakher's accident. (Pl. 56.1 Stmt. ¶ 14). Pursuant to its investigation, Travelers dispatched investigators to Southern Deli in order to interview and take statements from both the owner of the deli, Irena Bondar, and one of Bondar's employees, Luis Diaz Flores. (Pl. 56.1 Stmt. ¶¶ 14, 15; Def 56.1 Stmt. ¶¶ 14, 15). In their written statements, Bondar and Flores acknowledged that on September 11, 2003, they were aware of the occurrence of Zeygermakher's accident, they observed Zeygermakher laying prone at the foot of the stairs leading to Southern Deli's basement, and that ambulance personnel removed Zeygermakher from the scene. (Pl. 56.1 Stmt. ¶ 15). Bondar also stated that in May of 2004 she had received a telephone call from an attorney representing Zeygermakher, who asked her for insurance information, but that she declined to provide any such information. (Pl. 56.1 Stmt. ¶ 16). Prior to obtaining these statements, neither Travelers, nor any other individual acting on Travelers' behalf, issued to Southern Deli, or any other individual associated with Southern Deli, a reservation of rights letter. (Def. 56.1 Stmt. ¶ 16; Plaintiff's Local Rule 56.1

3

Statement of Uncontested Material Facts In Opposition to the Statement of Uncontested Material Facts Submitted by Defendants ("Pl. 56.1 Reply Stmt.") ¶ 16). During the course of its investigation, Travelers contacted counsel for Sidon in order to request an extension of the deadline by which its insured had to either appear or file an answer in the underlying lawsuit so that Travelers could complete its investigation and verify coverage. (Pl. 56.1 Stmt. ¶ 17; Def. 56.1 Stmt. ¶ 18). The request was granted and Southern Deli was given until December 3, 2004 to either appear or answer. (Pl. 56.1 Stmt. ¶ 18; Def. 56.1 Stmt. ¶ 19). Travelers neither appeared in the Zergermakher lawsuit nor answered the complaint on behalf of Southern Deli. (Def. 56.1 Stmt. ¶ 21; Pl. 56.1 Reply Stmt. ¶ 21).

After concluding its investigation on November 9, 2004, Travelers sent a letter to Southern Deli advising it that due to its breach of the Policy's notice-of-occurrence provision, coverage would be unavailable. (Pl. 56.1 Stmt. ¶ 19; Def. 56.1 Stmt. ¶¶ 23, 24, 25, 26). In that letter, Travelers also offered Southern Deli a gratuitous defense based on Southern Deli's assent to certain conditions. (Pl. 56.1 Stmt. ¶ 20). Specifically, Southern Deli's offer of defense was conditioned on (i) Southern Deli's understanding and consent that, among other things, Travelers maintained the right to withdraw its offer of defense at any time and under no circumstances would Travelers indemnify Southern Deli either through settlement or payment of any judgment rendered; and (ii) Southern Deli's signed, written consent that it agreed to be bound by the terms contained in Travelers' November 9, 2004 letter. (*Id*.). At no time did Travelers or any other individual acting on Travelers' behalf send a copy of the November 9, 2004 declination to Sidon. (Def. 56.1 Stmt. ¶ 28; Pl. 56.1 Reply Stmt. ¶ 28). Three days later, on November 12, 2004, Travelers issued a supplemental declination letter to Southern Deli that was largely identical to

the November 9, 2004 letter, again advising Southern Deli that if it were to consent to Travelers' offer of a conditional defense, it must sign and return the November 12, 2004 letter. (Pl. 56.1 Stmt. ¶ 21; Def. 56.1 Stmt. ¶¶ 29, 30). Travelers never sent the November 12, 2004 letter to Sidon. (Def. 56.1 Stmt. ¶ 32). On that very same day, however, Travelers issued a separate declination letter to Sidon's counsel, advising him that Travelers had disclaimed coverage to him due to his failure to independently provide Travelers notice of the accident's occurrence or undertake any investigation to ascertain the identity of Southern Deli's insurer. (Pl. 56.1 Stmt. ¶¶ 22, 25; Def. 56.1 Stmt. ¶¶ 33, 35, 36).

Southern Deli neither signed nor returned the November 12, 2004 declination letter indicating its assent to the terms of Travelers' offer of a conditional defense. (Pl. 56.1 Stmt. ¶ 27). On December 16, 2004, Travelers again wrote to Southern Deli, enclosing a copy of a letter received from Sidon's counsel advising Travelers that Southern Deli was in default in the underlying Zeygermakher lawsuit, but unilaterally extending the deadline by which Southern Deli was to file its answer to December 24, 2004. (Pl. 56.1 Stmt. ¶ 28). In this letter, Travelers further notified Southern Deli that its offer of a conditional defense was still available, provided Southern Deli returned a signed copy of Travelers' November 12, 2004 declination letter on or before December 22, 2004. (*Id*.).

Southern Deli again declined to return a signed copy of Travelers' November 12, 2004 correspondence, (Pl. 56.1 Stmt. ¶ 29), and on January 4, 2005, Travelers sent a supplemental declination letter to Southern Deli, which was also forwarded to Sidon's counsel. (Pl. 56.1 Stmt. ¶ 29; Def. 56.1 Stmt. ¶¶ 39, 41). Like the prior declination letters, this letter expressly cited Southern Deli's breach of the notice-of-occurrence provision as the basis for Travelers'

determination that coverage would not be available, and again informed Southern Deli that Travelers would neither defend nor indemnify Southern Deli in the underlying Zeygermakher lawsuit due to the late notice. (Pl. 56.1 Stmt. ¶ 30; Def. 56.1 Stmt. ¶ 40). Sidon claims that the January 4, 2005 disclaimer to Southern Deli was the first notice his counsel had received that Travelers had disclaimed coverage on the basis of Southern Deli's breach of the Policy's notice-of-occurrence provision. (Def. 56.1 Stmt. ¶ 43). Travelers disputes this contention.[2] (Pl. 56.1 Reply Stmt. ¶ 43).

In December of 2004, Sidon, both individually and as Administrator of the Zeygermakher estate, moved in the underlying Zeygermakher lawsuit for default judgement against Southern Deli. (Pl. 56.1 Stmt. ¶ 31; Def. 56.1 Stmt. ¶ 47). In September 2006, a default judgment was entered against Southern Deli in the amount of $1,707,613. (Pl. 56.1 Stmt. ¶ 33; Def. 56.1 Stmt. ¶ 48).[3] On or about September 22, 2006, counsel for Sidon wrote Travelers, enclosing a copy of the default judgment and, under threat of lawsuit, demanding that Travelers satisfy the above adverse judgment. (Pl. 56.1 Stmt. ¶ 34; Def. 56.1 Stmt. ¶ 49). Travelers then commenced the instant action seeking a declaratory judgment that it has no obligation to (i) defend or indemnify Southern Deli in the Zeygermakher lawsuit, or (ii) satisfy the default

---

[2] This point will prove moot, however, for reasons that are explored in greater detail in Point III.B.2.

[3] Although Sidon states in his Rule 56.1 Statement of Uncontested Material Facts that a default judgment in the amount of $1,500,000 was entered against Southern Deli in the Zeygermakher lawsuit, this figure was not inclusive of interest ($206,250) and disbursements ($1,363),which were also awarded. *See* Chetkhof Aff. ¶¶ 22, 23. Accordingly, the parties are in agreement that the total value of the default judgment entered against Southern Deli in the Zeygermakher lawsuit was $1,707,613. *Id.*

judgment entered in the Zeygermakher lawsuit.  (Pl. 56.1 Stmt. ¶ 35; Def. 56.1 Stmt. ¶ 51).

## DISCUSSION

I.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is properly granted

where the "pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ.P. 56(c).  In determining

whether such a genuine issue of material fact exists, the court must "resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary judgment is

sought."  *DeGeorge v. Ace American Ins. Co.*, No. 07 Civ. 2761 (RPP), 2008 WL 180786, at *2

(S.D.N.Y. Jan. 17, 2008) (quoting *Braham v. Clancy*, 425 F.3d 177, 181 (2d Cir. 2005)).

II.    Legal Standards Governing Notice-of-Occurrence Provisions in Insurance Contracts

Notice-of-occurrence provisions in insurance policies afford insurers an opportunity to

protect themselves.  *Security Mut. Ins. Co. of New York v. Ackerman-Fitzsimons Corp.*, 31

N.Y.2d 436, 440 (N.Y. 1972).  "They enable insurers to make a timely investigation of relevant

events and exercise early control over a claim." *Commercial Union Ins. Co. v. Int'l Flavors &

Fragrances*, 822 F.2d 267, 271 (2d Cir. 1987).  Early control may increase the likelihood of

settlement in lieu of litigation, and enable insurers to identify steps that can be taken to eliminate

the risk of similar occurrences in the future.  *Id.*  Additionally, without timely notice, "an insurer

may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud."

*Power Authority of the State of New York v. Westinghouse Electric Corp.*, 111 A.D.2d 336, 339

(1st Dep't 1986).  Finally, "[w]hen insurers have timely notice of relevant occurrences, they can

establish more accurate renewal premiums and maintain adequate reserves." *Security Mut. Ins. Co.*, 31 N.Y.2d at 440.

Under New York law, compliance with a notice-of-occurrence provision is a condition precedent to the insurer's obligation to defend or indemnify the insured. *Id.*; *see also White v. City of New York*, 81 N.Y.2d 955, 957 (N.Y. 1993); *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 239 (1st Dep't 2002); *C.C.R. Realty of Dutchess, Inc. v. New York Cent. Mut. Fire Ins. Co.*, 1 A.D.3d 304, 304-305 (2nd Dep't 2003). Indeed, "[a]bsent a showing of legal justification, the failure to comply with the notice condition vitiates coverage," *Id.*; *Deso v. London & Lancashire Indem. Co. of America*, 3 N.Y.2d 127, 129 (N.Y. 1957), and the insurer need not show prejudice as a precondition to asserting the defense of noncompliance. *C.C.R. Realty of Dutchess*, 1 A.D.3d at 305. Where a liability insurance policy requires that an insured provide notice of an occurrence "as soon as practicable," "such notice must be accorded the carrier within a reasonable period of time." *Tower Ins. Co. of New York v. Lin Hsin Long Co.*, 50 A.D.3d 305, 307 (2nd Dep't 2008) (citation omitted). In assessing the timeliness of notice given, however, "the courts have not turned over to the insured, or its agents, the exclusive responsibility for determining when an accident is likely to give rise to a liability claim." *Paramount Ins. Co.*, 293 A.D.2d at 325. "[T]hat a particular occurrence may not in the end result in a ripened claim does not relieve the insured from advising the carrier of that event." *Heydt Contracting Corp. v. American Home Assur. Co.*, 146 A.D.2d 497, 499 (1st Dep't 1989). Similarly, the Second Circuit has held that a provision requiring notice when it "appears likely" that a claim will or "may" involve a policy - a less onerous notice requirement than is involved in the case at bar - "does not require a probability - much less a certainty - that the policy at issue

will be involved." *Paramount Ins. Co.*, 293 A.D.2d at 240 (quoting *Christiania General Ins. Corp. v. Great American Ins. Co.*, 979 F.2d 268, 276 (2d Cir. 1992)). Rather, "[t]he duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement." *Id.* at 239-240. Finally, although the question of whether that belief is reasonable is ordinarily a question for the trier of fact, *Deso*, 3 N.Y.2d at 129, "[w]here there is no excuse or mitigating factor, the issue [of reasonableness] poses a legal question for the court, rather than an issue for the trier of fact." *SSBSS Realty Corp. v. Public Service Mut. Ins. Co.*, 253 A.D.3d 583, 584 (1st Dep't 1998) (quoting *Hartford Acc. & Indem. Co. v. CNA Ins. Cos.,* 99 A.D.2d 310, 313 (1st Dep't 1984)) (internal quotations omitted). In such cases, a court may find, as a matter of law, that the delay was unreasonable. *Vesta Fire Ins. Co. v. Seymour*, No. 96-CV-3844 (JG), 1996 WL 1057158, at *5 (E.D.N.Y. Dec. 17, 1996) (citation omitted).

An insured's failure to timely provide notice to an insurer as required by the terms of an insurance contract may be excused, however, where the insured has a good faith belief in nonliability, provided that belief is reasonable. *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743 (N.Y. 2005). *See also Security Mut. Ins. Co.*, 31 N.Y.2d at 441. Moreover, "the insured's belief must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness whether, and to what extent, the insured has inquired into the circumstances of the accident or occurrence." *Security Mut. Ins. Co.*, 31 N.Y.2d at 441; *see also White*, 81 N.Y.2d at 958 ("where a reasonable person could envision liability, that person has a duty to make some inquiry"). Finally, it is the insured that bears the burden of establishing the reasonableness of the excuse proffered as justification for the delay in providing notice.

*Kaesong Corp. v. United Nat'l Specialty Ins. Co.*, No. 07 CV 2897(ILG), 2008 WL 1902684, at *2 (E.D.N.Y. Apr. 25, 2008).

A.    Southern Deli's Late Notice

In the instant case, Travelers has established as a matter of law that its insured, Southern Deli, failed to give Travelers notice of the occurrence at issue within a reasonable period of time. It is beyond dispute that the accident occurred on Southern Deli's premises and that Bondar, owner of Southern Deli, was aware of the accident on the date of its occurrence. Moreover, the accident was sufficiently serious that Zeygermakher had to be removed from the premises by ambulance following his fall, a circumstance of which Bondar was aware, and which has not been disputed by the parties. Indeed, Bondar and Flores acknowledged as much in written statements obtained by Travelers' investigator. New York courts have generally held this circumstance - that an injured party was removed from the accident scene by ambulance - to be a "significant factor in determining the reasonableness of any delay in giving notice." *Paramount Ins. Co.*, 293 A.D.2d at 241. *See Zadrima v. PSM Ins. Cos.* 208 A.D.2d 529, 530 (2nd Dep't 1994) (four month delay in notifying insurer of accident inexcusable as matter of law where insured knew that injured party was transported to hospital by ambulance after accident). It is also undisputed that in May 2004 – approximately eight months after the accident – Bondar was contacted by an individual purporting to be Zeygermakher's counsel, who inquired as to the identity of Bondar's insurer. Finally, Southern Deli failed to report the incident to Travelers until October 2004 – some 13 months after the date of its occurrence, and five months after becoming aware that Zeygermakher was represented by counsel.

Under these circumstances, there can be little doubt that Southern Deli could have reasonably anticipated the involvement of its insurance policy in the aftermath of the accident. Accordingly, Southern Deli had an obligation under the policy to notify Travelers of the accident's occurrence "as soon as practicable." Southern Deli failed to do so, and has offered no excuse whatever, let alone a legal justification, for its delay in providing Travelers notice. Southern Deli's near 13-month delay in providing notice to Travelers is unreasonable as a matter of law. *See C.C.R. Realty of Dutchess, Inc.*, 1 A.D.3d at 305 (six month delay in providing insurer notice of occurrence held unreasonable as a matter of law where insured failed to offer valid excuse for delay); *Deso*, 3. N.Y.2d 127 (unexcused delay of 51 days constitutes breach of the notice-of-occurrence provision as a matter of law); *120 Whitehall Realty Assoc., LLC v. Hermitage Ins. Co.*, 40 A.D.3d 719, 721 (2nd Dep't 2007) (summary judgment in favor of insurer appropriate where, as here, insured failed to provide valid excuse for delay of over two and one-half months in providing notice of occurrence); *Power Authority of the State of New York*, 117 A.D.2d at 343 (nearly four month delay in providing notice to insurer, in absence of any mitigating factor or excuse for said delay, constitutes violation of the policy's notice provision as a matter of law). Travelers was therefore entitled to disclaim coverage on grounds that Southern Deli had breached the policy's notice-of-occurrence provision, which it did by its declination letters of November 9, 2004 and November 12, 2004.

B.     Defense of Good Faith Belief in Nonliability Unavailable To Southern Deli

As noted above, an insured's good-faith belief in nonliability may excuse or explain the failure to satisfy an insurance policy's notice requirement. *See Great Canal Realty Corp.*, 5 N.Y.3d at 743; *Security Mut. Ins. Co.*, 31 NY2d at 441; *White v. City of New York*, 81 N.Y.2d at

958. Again, it bears noting that the *insured* bears the burden of demonstrating the reasonableness of its belief under all of the circumstances.[4]

Sidon contends that Southern Deli's failure to timely notify Travelers is excused by Southern Deli's good faith belief that it would not be held liable as a result of the Zeygermakher accident. As the basis of *his* claim as to *Southern Deli's* good faith belief in nonliability, Sidon offers Southern Deli's awareness that Zeygermakher was severely intoxicated at the time of his accident. In other words, because of his extreme inebriation at the time of his fall, Sidon posits that it was Zeygermakher who was the true author of his injury and, therefore, that Southern Deli simply could not have reasonably anticipated the subsequent involvement of its policy with Travelers. This argument must fail. "The requirement of prompt notice of any occurrence that may result in a claim should not be interpreted in a way that the insurer is compelled to relinquish its right to prompt notice and all the benefits that accrue therefrom [...] by placing undue emphasis on the liability assessment of one not trained or even knowledgeable in such matters." *Paramount Ins. Co.*, 293 A.D.2d at 241. Put another way, "the notice requirement does not exempt occurrences, which, in the insured's estimation, do not portend probable liability on its part." *Id*.

Moreover, the circumstances surrounding the accident themselves belie the possibility of any such good faith belief in nonliability. As noted above, it is undisputed that Southern Deli was aware, as of the date of the accident's occurrence, that (i) an accident had, indeed, occurred;

---

[4] Although it is the *insured* that bears the burden of establishing the reasonableness of its belief as to nonliability, it appears here that Sidon, a judgment-creditor, is attempting to assume that burden. As such, it is not clear whether Sidon has standing to advance such an argument, though, in the interest of thoroughness, I will assume, *arguendo*, that such an argument may properly be made by an individual or entity other than the insured.

(ii) that the accident had transpired on its premises, (iii) that Zeygermakher was injured as a result of the accident; and (iv) that Zeygermakher's injuries were severe enough to warrant his being transported from the scene by ambulance. The Court is inclined to agree with Travelers that the confluence of these factors demand rejection of Sidon's argument.

As an initial matter, Southern Deli's awareness that Zeygermakher was removed from its premises by ambulance ought to preclude a finding that it could ever have reasonably maintained a good faith belief in nonliability arising from the accident. Indeed, as noted above, New York courts have consistently accorded this circumstance particular weight in determining the availability of the defense. *See Tower Ins. Co.*, 50 A.D.3d at 308 (defense of good faith belief in nonliability unavailable where insured's employees were aware of incident at time of occurrence, incident involved individual who slipped and fell on insured's premises, and patron had to be removed by stretcher and transported by ambulance); *Paramount Ins. Co.*, 293 A.D.2d at 242; *SSBSS Realty Corp.*, 253 A.D.2d at 585 (rejecting claim of good faith belief in nonliability where accident occurred in front of insured's premises, insured's employee observed injured unable to move after accident, circumstances indicated injured party had suffered serious injury, and injured party had to be removed from premises by ambulance); *Zadrima*, 208 A.D.2d at 530 (finding that "no ordinary prudent person could have reasonably believed himself to be free from potential civil liability" where insured was aware that injured party was removed by ambulance).

Moreover, even were I to assume that Zeygermakher's allegedly extreme intoxication was sufficient to give rise to a valid claim of good faith belief in nonliability in the accident's aftermath, Southern Deli certainly could have reasonably gleaned the possibility that its policy

13

would be implicated upon receiving a phone call from someone purporting to represent Zeygermakher's estate and inquiring as to the identity of Southern Deli's insurer. At that point, whatever belief in nonliability Southern Deli may have had at the time became unreasonable as a matter of law, and, therefore, the defense is unavailable to both Southern Deli and Sidon alike.

Finally, it is undisputed that Southern Deli failed, subsequent to the September 11, 2003 incident, to undertake an inquiry into the circumstances of the accident. As noted above, whether a post-accident inquiry is conducted may be considered by the Court as bearing on the reasonableness of the insured's professed belief in nonliability. The failure of Southern Deli to conduct such an inquiry is simply one more factor that militates against a finding that it had a good faith belief in nonliability sufficient to justify its delay in providing notice to Travelers.

III.     Sidon's Insurance Law § 3420 Arguments Must be Rejected as a Matter of Law

     A.     Travelers' Notice to Southern Deli Was Timely

Sidon's argument that Travelers' notice to Southern Deli disclaiming coverage was untimely as a matter of law must be rejected. New York State Insurance Law § 3420(d) provides that if an insurer seeks to disclaim liability or deny coverage under its policy, the insurer "shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured *and* the injured person or any other claimant." N.Y. Ins. Law § 3420(d) (McKinney 2000) (emphasis added). Indeed, "failure by an insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of the grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029 (N.Y. 1979). This rule applies even where the insured fails first to provide timely notice to the insurer concerning the claim. *Mount Vernon Fire Ins.*

*Co.*, 193 F. Supp. 2d 674, 676 (E.D.N.Y. 2004) (citation omitted). It is the insurer, therefore, that bears the burden of justifying any delay in providing such notification to the insured of its decision to disclaim coverage. *Id*. at 677 (citation omitted). Finally, the point from which the reasonableness of any such delay is measured is "the time when the insurer was aware of sufficient facts to disclaim." *Id*. (citation omitted).

Normally, the determination of whether a delay in providing notice of disclaimer of liability or denial of coverage is reasonable is a question of fact to be resolved by the jury, which "depends on all the facts and circumstances, especially the length of and the reason for the delay." *Hartford Ins. Co.*, 46 N.Y.2d at 1030. Indeed, it is only the exceptional case in which the reasonableness of an insurer's delay in providing notice of disclaimer may be determined as a matter of law. *Id*. (two month delay held unreasonable as a matter of law where insurer failed to provide any explanation for delay). New York courts have, however, consistently recognized that an insurer's prompt, good faith investigation may justify a delay that would otherwise be considered unreasonable in the absence of any explanation. *Id*. *See also Matter of Prudential Property & Casualty Ins. Co.*, 213 A.D.2d 408, 408 (2d Dep't 1995) (delay of "slightly more than two months" to conduct an investigation deemed reasonable); *Vesta Fire Ins. Corp.,* No. 96-CV-3844 (JG), 1996 WL 1057158, at *6 (E.D.N.Y. Dec. 17, 1996) (same for a period of "just over three months"); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F. Supp. 641, 648-49 (E.D.N.Y. 1995) (same for a period of "over two months").

There is simply no question that Travelers engaged in a good faith, prompt investigation of the claim. It is undisputed that Travelers first became aware of the pending claim on October 14, 2004, when it received the first notice of the Zeygermakher lawsuit from Southern Deli.

Thereafter, Travelers promptly commenced an investigation into Southern Deli's claim. It also appears beyond dispute that on October 25, 2004, less than two weeks later, Travelers, through an investigator retained by its representative, obtained written statements from Bondar and Diaz concerning the events that transpired on the date of Zeygermakher's accident. Finally, both parties agree that Travelers, by its declination letters of November 9, 2004 and November 12, 2004, provided Southern Deli notice of its disclaimer of coverage on grounds that Southern Deli had breached its notice obligations under the policy. Thus, a mere twenty-six days had elapsed from the date on which Travelers first received notice of the claim to the date on which it provided notice to Southern Deli of its coverage determination. Clearly, this period of nearly one month does not represent an unreasonable delay in providing notice of disclaimer under the precedent cited above, and, therefore, this Court finds that Travelers' notice to Southern Deli was timely.

B.     Defendants' Insurance Law §§ 3420(a) and (d) Arguments Must be Rejected

Sidon argues without support that the notice Southern Deli provided Travelers ought to be deemed notice provided by Sidon directly,[5] and, therefore, Travelers had an obligation to disclaim directly to Sidon, which it failed to do. (Def. Mem. At 8-12.) In a related argument, Sidon contends that the November 12, 2004 declination letter he received was ineffective on grounds that it did not notify Sidon that Travelers had disclaimed coverage on the basis of

---

[5] I reject as without merit Sidon's contention that service of process upon an insured ought to be considered notice provided by an injured party to the insurer directly. *See Garay National Grange Mutual Insurance Co.*, No. 04-0453-CV, 2004 WL 2617058, at * *1 (2d Cir. 2004) ("[s]ervice of [the] summons and complaint on the insured [ . . . ] does not qualify as notice to the insurer under New York law."); *Agway Ins. v. Alvarez*, 258 A.D.2d 487, 488 (2d Dep't 1999) (finding no independent notice to the insurer where the injured claimant merely served the complaint on the insured).

Southern Deli's breach of the Policy's notice provision. Therefore, urges Sidon, the January 4, 2005 declination letter – the first notice Sidon received in which he was notified of Southern Deli's breach – ought to be found legally invalid as untimely. These arguments must be rejected.

1. <u>Sidon Did Not Diligently Attempt to Ascertain Travelers' Identity</u>

Insurance Law § 3420(a)(3) affords an injured party the ability to avoid the consequences of an insured's untimely notice by providing the injured party an independent right to notify an insurance carrier of an accident. *See, e.g.*, *Steinberg v. Hermitage Ins. Co*, 26 A.D.3d 426 (2d Dep't 2006); *Tower Ins. Co.*, 50 A.D.3d at 309 (citing *Jenkins v. Burgos*, 99 A.D.2d 217, 221 (1st Dep't 1984)). However, in order to rely upon § 3420(a)(3), an injured party is required "to demonstrate that he or she [i] acted diligently in attempting to ascertain the identity of the insurer, and [ii] thereafter expeditiously notified the insurer." *Id.* at 428 (citation omitted); *see also American Home Assur. Co. v. State Farm Mut. Auto. Ins. Co.*, 227 A.D.2d 409, 410 (2nd Dep't 2000); *Serravillo v. Sterling Ins. Co.*, 261 A.D.2d 384, 385 (2nd Dep't 1999); *Eveready Ins. Co. v. Chavis*, 150 A.D.2d 332, 333 (2nd Dep't 1989).

Here, it is beyond question that Sidon cannot establish that he or his counsel diligently attempted to ascertain the identity of Southern Deli's insurer. In a letter dated October 14, 2003, Zeygermakher's counsel advised Southern Deli of the lawsuit arising from the September 11, 2003 accident, and expressly requested that Southern Deli both (1) provide him with the name of, and (2) forward a copy of the letter to, its insurance carrier. *See* Strauss Aff. Exh. Q. Sidon contends that Southern Deli never responded to this correspondence. (Def. 56.1 Stmt. ¶ 5).[6]

---

[6] Travelers lacks knowledge or information sufficient to form a belief as to the truth of Sidon's assertion. Pl. 56.1 Stmt. ¶ 5. Accordingly, I will consider the assertion uncontroverted.

Though a promising start toward meeting Sidon's obligation to diligently pursue the identity of Souther Deli's insurer, Sidon waited some *six and one-half months* thereafter before following up on this initial attempt.[7]  On May 14, 2004, an individual purporting to be a representative of Zeygermakher contacted Southern Deli and spoke with Bondar, again specifically requesting Southern Deli's insurance information.  (Pl. 56.1 Stmt. ¶ 16).  At that time, Bondar refused to provide the caller any such information.  On that very same day, Zeygermakher's counsel sent Southern Deli a letter memorializing the contents of the conversation he had with Bondar, and again requested that she both (1) provide him with the name of, and (2) forward a copy of the letter to, Southern Deli's insurance carrier.  The foregoing represents the entirety of the communications, as reflected in the record, between Sidon and Southern Deli through which Sidon attempted to ascertain the identity of Southern Deli's insurer.

I conclude that, as a matter of law, Sidon has failed to establish that he acted with sufficient diligence in attempting to ascertain Travelers' identity such that he may avoid the adverse consequences of Southern Deli's untimely notice under Insurance Law § 3420(a)(3).  Putting aside the issue of whether two attempts are sufficient as a matter of law, the six and one-half month delay between the first and second attempts to ascertain the identity of Southern Deli's insurance carrier is unreasonable as a matter of law.  *See Richter v. Fireman's Fund Am. Ins. Co.*, 27 A.D.2d 223, 224-25 (1st Dep't 1967) (finding lack of diligence on basis of what court deemed a "chronology of inactivity," where injured party sent two letters to insureds

---

[7] Although Sidon claims in his Rule 56.1 Statement to have sent an October 27, 2003 notice of the lawsuit to Arvik Properties, the owners of the building in which Southern Deli was located, this letter is nowhere to be found among the exhibits appended to either plaintiff's or defendants' summary judgment submissions.  *See* Strauss Aff; Chetkhof Aff.  Accordingly, I will not consider that asserted fact.

within one month of accident, thereafter twice attempted to contact insureds by telephone some three months after accident, and only ten months after accident requested an insurance information search of the Department of Motor Vehicles, which ultimately yielded identity of insurance carrier); *Steinberg*, 26 A.D.3d at 428 (unexcused five-month delay in notifying insurer of occurrence, even where insured was first to so notify, precludes showing of diligence under § 3420(a)(3)).

2.    Travelers Did Not Violate § 3420(d)

Alternatively, Sidon contends that Travelers' declination letters to him were ineffective because they failed to comply with §3240(d)'s timeliness and specificity requirements. Specifically, Sidon argues that Travelers was obligated to include in these letters the reasons for denying coverage to Southern Deli, *i.e.*, *Southern Deli*'s breach of the Policy's notice-of-occurrence provision. Sidon argues that the first notice defendants received specifically notifying them of Southern Deli's breach was in January of 2005, which should be found untimely. This argument must be rejected.

Initially, for the same reasons cited in Point II.A above, I conclude that Travelers' November 12, 2004 declination to Sidon,[8] in which it explicitly cited *Sidon's* breach of the notice-of-occurrence provision as the basis for its adverse coverage determination, was timely and sufficiently specific to satisfy § 3240(d), leaving aside whether Travelers even had a duty to disclaim directly to Sidon in the first instance. *See Agway Ins.*, 258 A.D.2d 487, 488; *Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 679 (E.D.N.Y. 2002); *see also* discussion

---

[8] In this regard I reject Sidon's reliance on the January 4, 2005 letter as the first notice from Travelers which satisfies § 3240(d)'s specificity requirements.

below.  That Travelers did not also apprise Sidon of Travelers' determination that *Southern Deli* breached the notice provision is factually incorrect and immaterial.

The November 12, 2004 letter informs Sidon, at the very least indirectly, that Southern Deli did not timely notify Travelers of the occurrence.  Although the letter is not as explicit as it could have been, it informs Sidon with sufficient specificity, *inter alia*, that: (1) Southern Deli knew the accident occurred on September 11, 2003; (2) Southern Deli did not inform Travelers of the occurrence until October 14, 2004, when it forwarded the Zeygermakher summons and complaint to Travelers; (3) Southern Deli stated that it did not inform Travelers or its agent of the occurrence earlier because it was not necessary in light of Zeygermakher's intoxication; (4) the Policy requires that Southern Deli inform Travelers "as soon as practicable" of an "occurrence"; and, (5) that the letter "is not intended to be, nor shall it be construed as an exhaustive listing or discussion of policy terms . . . facts or circumstances or principles of insurance law which may further provide a basis to preclude coverage under" the Policy. (Plaintiff's Reply Memorandum in Support of Its Motion for Summary Judgment ("Pl. Reply Mem.") at 6-7; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgement ("Pl. Opp. Mem.") at 13-16).  While the letter does not expressly state "We are denying coverage to you in part because of Southern Deli's late notice to us," it provides sufficient facts to alert Sidon that Southern Deli did not timely notify Travelers of the occurrence, and that this was at least one of the bases upon which Travelers was denying coverage to Sidon.

The fact that Sidon received a declination letter at all is proof that Travelers was denying coverage due at least in part to Southern Deli's late notice.  Simply stated, had Travelers not

been separately denying coverage to Southern Deli due to its breach of the Policy's notice provision, it would not have sent a declination letter to Sidon. In other words, had Southern Deli timely notified Travelers of the occurrence, Sidon's independent breach of § 3240(a)(3), even if true, would be wholly irrelevant to Travelers' coverage determination. Section 3240(d) does not permit an insurer to deny coverage to an insured where the insured timely notifies the insurer of an occurrence, but the injured party does not, or *vice versa*. Put even another way, § 3240(d) permits an insurer to deny coverage only where *both* the insured and the injured party fail to provide timely notice of an occurrence. Thus, Sidon cannot be heard to argue that Travelers' November 12, 2004 declination was ineffective on grounds that Travelers failed to provide Sidon notice that it was disclaiming coverage on the basis of Southern Deli's breach of the Policy's notice-of-occurrence provision.

Finally, Sidon's legal argument – that § 3240(d) requires an insurer to always separately notify an injured party as to each and every basis for denying coverage –  is unavailing. (Defendants' Memorandum in Support of Their Cross-Motion for Summary Judgment ("Def. Mem.) at 8-12). In so arguing, Sidon conveniently ignores the undisputed fact that he never directly notified Travelers about the occurrence. New York insurance law does not require an insurer to notify an injured party when that injured party has not independently provided notice of an occurrence to the insurer, whatever the ultimate reason for the denial of coverage. My reasoning in this regard is guided by the Second Circuit Court of Appeals' decision in *Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209 (2d Cir. 2004) (Sotomayor, J.), which Sidon largely ignores. (Defendants' Reply Memorandum in Support of Their Cross Motion for Summary Judgment ("Def. Reply Mem.") at 3-5).

21

In *Webster*, the plaintiff – Webster – was injured on October 10, 1996, and informed one of the insureds – Linton Grant – of his claims in a letter ten days later. *Id.* at 211.[9] Linton forwarded the letter to his insurance broker, but not his insurer, a few days thereafter. *Id.* Webster never notified the insurer directly of the occurrence. Almost five years later, Webster filed suit against Linton and others. *Id.* Linton promptly forwarded a copy of the summons and complaint to his insurer, who denied coverage to him due to late notice. The insurer never notified Webster of the denial of coverage.

Webster argued that even though he never notified the insurer of his claim, as is the case here, the insurer was estopped from denying coverage to Linton because it did not cite Webster's failure to give notice as an additional reason for denying coverage in its disclaimer addressed to Linton. *Id.* at 217. The district court concluded that the insurer had no obligation to disclaim coverage directly to Webster, or to notify Linton of the additional ground for denying coverage – Webster's independent failure to timely notify the insurer – because Webster never notified the insurer of the occurrence. *Id.* at 213. On appeal, the Second Circuit concluded that the district court had properly rejected Webster's argument. Specifically, the Circuit found that an insurer's obligation to disclaim coverage directly to an injured party is triggered only upon the injured party's provision of notice of the occurrence. *Id.* at 217. Thus, because Webster never provided such notice to the insurer, "the insurer was not required to address Webster's failure to provide notice in its disclaimer to [its insured], *nor was [the insurer] obligated to send a separate notice*

_____

[9] The other insured, Ina Grant, was Linton's wife. "Because an insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim, Ina's failure to provide any notice relieved Mount Vernon of its obligation to disclaim coverage as to her." *Id.* at 214.

*of disclaimer to Webster.*"  *Webster*, 368 F.3d at 217-218 (emphasis added).  *See also Mount Vernon Fire Ins. Co.*, 193 F. Supp. 2d at 679 ("Where an injured party does not assert its own right to notify the insurance carrier, but rather relies upon the insured to provide notice, 'its rights vis-a-vis the insurer remain derivative' such that disclaimer against the insured for untimely notice is sufficient to disclaim against the injured party as well.") (quoting *United States Liability Ins. Co. v. Albertell*, No. 92 Civ. 301 (JSM), 1992 WL 380024, at *5 (S.D.N.Y. Dec. 7, 1992)); *Agway Ins.*, 258 A.D.2d at 488 ("[S]ince the [injured parties] never gave any notice to [the insurer] of the existence of [their claim], they may not rely upon the insured's notice to [the insurer] of the [claim] in support of an argument that [the insurer] should be estopped from disclaiming coverage on the [claim] due to [the insurer's] failure to directly notify the [injured parties] of the disclaimer.")  The same result must follow here.  Because Sidon never notified Travelers directly of the occurrence, Travelers was not obligated to disclaim coverage directly to Sidon.  Thus, whatever perceived deficiencies in Travelers' notice to Sidon are immaterial.[10]

For the aforesaid reasons, therefore, Travelers is not estopped from denying coverage based on its alleged failure to timely disclaim with the requisite specificity as to Sidon.

## IV.    Sidon's Waiver and Estoppel Arguments Are Without Merit

Sidon contends that Travelers is prevented from disclaiming coverage by the operation of the separate and independent doctrines of common law waiver and estoppel.  First, Sidon argues without citation to any authority that Travelers waived whatever right it may have had to

---

[10]  In this regard, and because I rely on *Webster* as binding, Sidon's reliance on the various New York state cases cited in his briefs and the "principle" of *impotentia excusat legum*, is misplaced.  (Def. Mem. at 12-14; Def. Reply Mem. at 6).

disclaim coverage as to Southern Deli when it deliberately elicited information from its insured that would ultimately serve as the basis for its adverse coverage determination without having first notified Southern Deli that coverage was in question through issuance of a reservation of rights letter. Second, Sidon contends that Travelers ought to be estopped from disclaiming coverage on grounds that Southern Deli was lulled into inactivity due to the affirmative conduct of Travelers in investigating the underlying incident without issuing a reservation of rights, which, according to Sidon, led to a default judgment against Southern Deli. Sidon's unsupported arguments are without merit and, accordingly, must be rejected.

A.      Waiver

Under New York insurance law, waiver is an equitable doctrine that allows for the insured's indemnification despite the insured's late notice. *Commericial Union Ins. Co.,* 822 F.2d at 274. The insured must establish waiver by submitting evidence that tends to show the insurance company intended to abandon a specific known defense. *Id.*; *see also United States Liab. Ins. Co. v. Winchester Fine Arts Servs.*, 337 F. Supp. 2d 435, 452 (S.D.N.Y. 2004); *New York v. Amro Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991); *Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 86 (E.D.N.Y. 1993); *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (N.Y. 1980). Here, Sidon has failed to establish that Travelers intended to abandon its late-notice defense. Sidon has simply failed to put forth any facts to support the contention that Travelers manifested an intention to waive its right to disclaim liability through its investigation of the claim without first issuing a reservation of rights letter.

As an initial matter, an insurance company is not expected to merely rely on the allegations in the complaint filed against its insured in ascertaining whether or not coverage will

be extended. *Commercial Union*, 822 F.2d at 274. Rather, it is expected that the insurer will conduct an investigation to learn the circumstances of the incident for which its insured is requesting coverage. *Id.*; *see also Winchester Fine Arts Servs.*, 337 F. Supp. 2d at 450. Indeed, such an investigation is encouraged to "prevent premature or piecemeal disclaimers." *Winchester Fine Arts*, 337 F.Supp 2d at 453. To suggest that an insurance company has waived its right to assert a defense when it undertakes an investigation is contrary to both common sense and well-established law. *Penna and Penna v. Peerless Ins. Co.*, 510 F. Supp. 2d 199, 207 (W.D.N.Y. 2007). Insurance companies have a legal right to conduct such investigations prior to determining coverage. *Id.* Delaying a disclaimer of coverage for investigative reasons is only unreasonable when the basis for denying coverage was or should have been apparent before the onset of the delay. *Winchester Fine Arts*, 337 F. Supp. 2d at 451. It is clear from the facts of this case that Travelers was within its rights to conduct an investigation of the incident prior to determining coverage. Waiver requires an act or representation by the insurer that is more than an investigation or negotiation of the claim. *Penna*, 510 F. Supp. 2d at 205. Here, Sidon has simply failed to establish that Travelers engaged in any such act or made any such representation that went beyond its conduct of an initial investigation, which it was within its rights to do.

Moreover, Sidon has failed to demonstrate that Travelers waived its right to deny Southern Deli coverage on grounds that it failed to send Southern Deli a reservation of rights letter prior to investigating the claim. The purpose of a reservation of rights is to notify the insured of the insurer's potential coverage defenses and to permit the insurer to satisfy its duty to defend without forfeiting its right to disclaim. 1 Matthew Bender & Co., Inc., 1-11 New Appleman Insurance Law Practice Guide § 11.01 (2009) (LEXIS). A reservation of rights is a

unilateral letter from the insurer to the insured agreeing to defend the insured, but reserving the right to assert coverage defenses. *Id*. at § 11.11[2][a]. The general requirements for a reservation of rights are timeliness and specificity as to the claims for which coverage is being denied, as well as the basis for that determination. *Id*. A reservation of rights letter on its own does not constitute an effective disclaimer under New York Insurance Law § 3420(d)(2). *Hartford Ins. Co.*, 46 N.Y.2d at 1029; *Blue Ridge Ins. Co. v. Jiminez*, 777 N.Y.S.2d 204, 205 (2nd Dep't 1997). More importantly, however, an insurance company is not under a statutory obligation to provide a reservation of rights letter, and the lack of one is not a basis on which to presume there will be coverage when the insurer has not undertaken the defense of the insured. *Winchester Fine Arts*, 337 F. Supp. 2d at 533.

Finally, research reveals no authority mandating that an insurance company issue a reservation of rights letter prior to commencing an investigation under penalty of being deemed to have waived its right to disclaim coverage on the basis of late notice. Notably, Sidon does not cite to a single case that supports such a broad-sweeping proposition. Sidon has thus failed to establish that Travelers has waived its right to disclaim coverage based on late notifice on grounds that it conducted an investigation prior to making its final coverage determination without notifying Southern Deli that coverage was in question. Because there exists no genuine issue of material fact as to whether Travelers waived its right to assert a late notice defense, summary judgment in favor of Travelers ought to be granted.

B.    Estoppel

Equitable estoppel limits an insurer's ability to "delay coverage decisions after undertaking the defense of an action." *Commercial Union*, 822 F.2d at 274. When applicable, it

precludes the insurer from denying coverage if: (i) the period of time taken by the insurer to determine coverage is unreasonable under the circumstances, and (ii) the defense undertaken by the insurer on behalf of the insured during that period prejudices the insured. *Id.* Under New York law, an insurer's failure to provide a timely disclaimer may serve as grounds for equitable estoppel only upon a showing of prejudice. *Winchester Fine Arts*, 337 F. Supp. 2d at 452; *see also Vecchiarelly v. Cont'l Ins. Co.*, 716 N.Y.S.2d 524, 526 (4th Dep't 2000).

The period of time in which it took Travelers to disclaim was not unreasonable under the circumstances. Where, as in this case, an insurer's delay is attributable to its undertaking of an investigation of coverage, the delay is considered reasonable. *Winchester Fine Arts*, 337 F. Supp. 2d at 451. As noted above, Travelers provided timely notice of its coverage determination to Southern Deli, having delayed a mere twenty-two days, during which it conducted an investigation into a possible breach of the Policy's notice provision.

Sidon contends that Travelers ought to be estopped from disclaiming coverage because of its affirmative conduct in requesting an extension of time in which Southern Deli must file an answer while failing to notify Southern Deli as to the deadline for the filing thereof. Sidon posits that Travelers' conduct resulted in an award of default judgment against Southern Deli because Southern Deli relied on Travelers' representations to Sidon's counsel in forming its belief that Travelers would continue to defend it in the underlying Zeygermakher lawsuit.[11] As an initial matter, Travelers' request for an extension of time did not rise to the level of a formal interposition of a defense on behalf of its insured. Rather, the request was made via an informal

---

[11] Curiously, Sidon offers no explanation as to how Southern Deli could have relied to its detriment on representations Travelers made to counsel for Sidon to which it was not privy at the time or subsequently.

telephone conversation with Sidon's counsel. More importantly, however, the request was made merely to secure additional time in which to complete Travelers' ongoing investigation into the facts and circumstances surrounding Zeygermakher's accident and to avoid an entry of default against its client during that period. Travelers thereafter promptly concluded its investigation and notified Southern Deli via the two declination letters Travelers sent on November 9, 2004 and November 12, 2004 of its determination that coverage was unavailable due to its breach of the Policy's notice-of-occurrence provision.

Although Travelers failed in either of these declination letters to notify its insured of the filing deadline extension it had obtained on consent from Sidon's counsel, it is undisputed that by letter dated December 16, 2004 Travelers did indeed provide Southern Deli with a date certain by which it was to file its answer in the Zeygermakher lawsuit. Specifically, Travelers enclosed with its letter to Southern Deli a copy of a letter received from Sidon's counsel, which advised that, although Southern Deli was in default in the Zeygermakher lawsuit, Sidon was prepared to unilaterally extend the date by which Southern Deli must file its answer to December 24, 2004. Thus, Southern Deli was on notice as of December 16, 2004 as to its filing deadline and, accordingly, Sidon cannot claim prejudice on behalf of Southern Deli on this basis.

Moreover, even were I to assume that Southern Deli could have relied to its detriment upon representations made by Travelers to Sidon's counsel to which it was not privy, Southern Deli's belief that Travelers would continue to defend it on the basis of those representations is belied by the fact that in the November 9, 2004 declination letter Travelers made clear that whatever defense it offered would be available only if Southern Deli agreed to be bound by certain stated conditions. Specifically, Travelers' offer of defense was conditioned on Southern

Deli's (i) formal acknowledgment and consent that, among other things, Travelers was under no obligation to indemnify Southern Deli either through settlement or payment of any adverse judgment secured against it in the underlying Zeygermakher lawsuit, and (ii) Southern Deli's signed, written consent that it agreed to be bound by the terms contained in the November 9, 2004 letter.  (Pl. Rule 56.1 Statement ¶¶ 20, 21).  Travelers' November 12, 2004 letter again offered the same conditional defense to Southern Deli as that detailed in Travelers' November 9, 2004 letter, again advising Southern Deli that were it to consent to Travelers' proposal, it must sign and return the November 12, 2004 letter.  Southern Deli never signed and returned the November 12, 2004 letter, effectively declining Travelers' offer of a conditional defense.  To argue now that Southern Deli somehow relied upon the aforementioned representations to Sidon's counsel in forming its mistaken belief that Southern Deli would continue to defend it in the underlying Zeygermakher lawsuit is simply incredulous.  Accordingly, no defense having been undertaken by Travelers during the period in which it was evaluating coverage, Sidon simply cannot establish that Southern Deli was prejudiced on this basis.

Having failed to demonstrate both unreasonable delay in the provision of a notice of disclaimer by Travelers and prejudice to Southern Deli, Sidon's estoppel argument must be rejected.

## **CONCLUSION**

For the aforementioned reasons, I respectfully recommend that Travelers Indemnity Company of America's motion for summary judgment be granted in its entirety, and The Estate of Yuri Zeygermakher's and Elijah Sidon's cross-motion for summary judgment be denied in its entirety.

Any objections to this Report and Recommendation ("R&R") must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within fourteen (14) days of receiving this R&R. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

 **SO ORDERED.**

Dated: Brooklyn, New York
       March 3, 2010

Ramon E. Reyes, Jr.
Ramon E. Reyes, Jr.
United States Magistrate Judge