FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR - 1 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE TRAVELERS INDEMNITY
COMPANY OF AMERICA

                Plaintiff,

— against —

SOUTHERN GASTRONOM CORP.,
d/b/a SOUTHERN DELI AND THE
ESTATE OF YURI ZEYGERMAKHER,
Decedent, by his Administrator, ELIJAH
SIDON AND ELIJAH SIDON, individually,

                Defendants.
-----------------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-5536 (SLT) (RER)

**TOWNES, United States District Judge:**

On October 12, 2006, plaintiff The Travelers Indemnity Company of America ("Travelers" or "the Insurer") commenced this action seeking a declaratory judgment that it has no obligation to defend or indemnify defendant Southern Gastronom Corp. d/b/a Southern Deli ("Southern Deli" or "the Insured") under the terms of a commercial general liability insurance policy ("Travelers Policy"). Specifically, Travelers seeks a declaration that it owes no duty to pay, satisfy or otherwise be liable for a $1.7 million default judgment entered against Southern Deli in favor of the Estate of Yuri Zeygermakher in a state court wrongful death suit ("the Zeygermakher Lawsuit"). Defendant Elijah Sidon, individually and as Administrator of the Estate of Yuri Zeygermakher ("Sidon" or "Injured Party"), procured the default judgment against Southern Deli and now seeks to compel Travelers, as Southern Deli's insurer, to pay the unsatisfied judgment plus costs and interests under the New York Insurance Law § 3420.

On August 14, 2008, Travelers filed a motion for summary pursuant to Rule 56 of the Federal Rules of Civil Procedure. Travelers argued that both Southern Deli and Sidon failed to

1

timely notify Travelers of the occurrence that resulted in Zeygermakher's death as required by the Travelers Policy. Based on this failure, Travelers claims that it properly disclaimed liability on Sidon's claims arising from Zeygermakher's death.

On March 12, 2009, Sidon cross-moved for summary judgment. Sidon contended that Travelers failed to comply with the time and specificity requirements for a valid disclaimer under New York Insurance Law § 3240(d). Sidon further maintains that Travelers should be precluded from disclaiming liability based on the common law doctrines of waiver and estoppel.

On September 2, 2009, the Court referred the matter to the Honorable Ramon E. Reyes, Jr. to prepare and submit a Report and Recommendation ("R & R") containing findings of fact, conclusions of law, and a recommended disposition of the motions, pursuant to 28 U.S.C. § 636(b)(1). On March 3, 2010, Judge Reyes filed the R & R recommending that Travelers' motion for summary judgment be granted and Sidon's cross-motion be denied. On March 17, 2010, Sidon submitted timely objections to the R & R.

If any party serves and files timely written objections to a magistrate judge's R &R, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* those portions of the R & R to which Sidon has objected. The Court assumes familiarity with the facts and procedural

2

posture of the case, as set forth in the R & R. *See* R & R 2-7. For the reasons set forth below, the Court adopts Judge Reyes's thorough and persuasive R & R and grants Travelers' motion for summary judgment and denies Sidon's cross-motion for summary judgment.

## DISCUSSION

### I. Injured Party's Right to Receive Timely Notice of Disclaimer

Sidon first contends that Travelers' failure to provide the Injured Party with notice of disclaimer on the ground of Southern Deli's late notice to Travelers violates N.Y. Insurance Law § 3420(d)(2). New York's insurance law provides that "an insurer . . . disclaim[ing] liability [under a liability policy] . . . shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and *the injured person* or any other claimant." N.Y. Ins. L. § 3420(d)(2) (emphasis added). Sidon argues that the R & R's reliance on *Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209 (2d Cir. 2004) for the proposition that "an insurer's obligation to disclaim coverage directly to an injured party is triggered only upon the injured party's provision of notice of the occurrence," R & R 22, was misplaced or inapplicable to the present case. Sidon states that a plain reading of § 3420(d)(2) indicates that an injured party need not first give notice to the insurer in order to be entitled to receive a copy of a disclaimer letter and, thus, Travelers had an obligation to provide Sidon, as the injured party, with specific and timely notice of the disclaimer.

The Court holds that Travelers provided Sidon sufficient notice of the disclaimer based on Southern Deli's late notice to satisfy the requirements of § 3420(d)(2). On November 12, 2004, Travelers sent a letter to Sidon's counsel indicating that it was disclaiming liability under the Travelers Policy. *See* Strauss Aff., Ex. J. This letter not only outlined Sidon's failure to directly contact Insurer regarding the accident leading to Zeygermakher's death, but also

3

Southern Deli's failure to promptly notify Travelers of the occurrence. *Id.* First, the November 12, 2004 letter recounts that Travelers did not receive notice of the occurrence from Southern Deli until October 14, 2004 even though the accident occurred on September 11, 2003. *Id.* at 30. Next, the letter states that "Southern Deli advised . . . Travelers that they did not notify either . . . Travelers or their agent . . . because they felt it was not necessary due to the [injured party] being drunk." *Id.* at 31. Finally, the letter recites the Insured's general liability conditions under the Travelers Policy requiring that the Insured "must see to it that [Travelers is] notified as soon as practicable of an 'occurrence' . . . which may result in a claim." *Id.*

The November 12, 2004 letter effectively communicates Travelers' intention to disclaim the Travelers Policy based on Southern Deli's late notice. The purpose of the specificity requirement inherent in § 3240(d) is to allow claimants to "assess[] whether [an] insurer will be able to disclaim successfully" and thus prevent "uncertainty [that] could prejudice the claimant's ability to . . . obtain recovery." *Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 864 (N.Y. 1979). Here, Travelers' November 12 letter to Sidon sufficiently satisfies this purpose and, thus, Travelers did not violate § 3240(d). Based on the letter, Sidon was put on notice that Southern Deli failed to timely fulfill its responsibilities under the Travelers Policy and that a disclaimer on that ground was possible, if not likely. Considering these circumstances, Sidon would be able to adjudge the likelihood of Travelers' success in seeking to disclaim the Travelers Policy.

Even if the November 12, 2004 letter failed to properly apprise Sidon of Southern Deli's late notice as a ground for disclaiming, Travelers' November 9, 2004 notice of disclaimer to Southern Deli on this ground would serve the ends of § 3240(d) for purposes of this litigation. Try as Sidon may to escape from the weight of *Webster,* he cannot do so. "New York law is clear that, where the insured is the first to give notice, and the injured party later gives notice,

4

'the injured party's notice is 'superfluous' and the insurer need not disclaim as to the injured party.'" *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, No. 07 Civ. 3635, 2009 WL 2476538, at *1 (S.D.N.Y. Aug. 13, 2009) (quoting *Webster*, 368 F.3d at 217 n.6). Indeed, "[w]here an insured provides notice of an occurrence before an injured party exercises its independent right to notify an insurer of an occurrence, a disclaimer issued to the insured for failure to satisfy the notice requirement of the policy will be effective as against the injured party as well." *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ. 4412, 2007 U.S. Dist. LEXIS 59241, at **19-20 n.8 (S.D.N.Y. Aug. 13, 2007). Thus, Travelers' November 9, 2004 letter to the Insured disclaiming liability based on Southern Deli's late notice unequivocally serves as notice of disclaimer to Sidon on the same ground for purposes of § 3240(d). To the extent Sidon seeks to disregard these precedents, the Court declines the invitation.

Accordingly, the Court rejects Sidon's first objection to the R & R.

## II. Waiver & Estoppel

Sidon next challenges the R & R's holding that Travelers did not waive its right to disclaim based on its investigation into the occurrence and reasserts that Travelers should be estopped from disclaiming coverage. Sidon argues that Travelers failed to issue a reservation of rights letter to Southern Deli before it secured statements from various Southern Deli employees which were ultimately used as a basis for disclaiming. Sidon maintains that a case relied on in the R&R, *Penna and Penna v. Peerless Ins. Co.*, 501 F. Supp. 2d 1999 (W.D.N.Y. 2007), involved the insurer providing three reservations of rights letters during the course of investigation and, thus, Travelers should have issued a reservation letter to prevent waiver. With respect to the estoppel argument, Sidon avers that Travelers' acts to investigate the occurrence prejudiced Southern Deli and formed the basis for Travelers' disclaimer of liability.

5

While the Court does not doubt that the issuance of a reservation of rights letter would have been the optimal course for Travelers here, it was not contractually or statutorily mandated. While it is true that the insurer in *Penna and Penna* did provide three reservation letters in the case, as Sidon concedes, the court's decision in the case was only based "in part" by that fact. Pl. Objections 7 (citing *Penna and Penna*, 510 F. Supp. 2d 207). *Penna and Penna*'s central holding was that pre-suit investigatory acts on the part of an insurer, such as arranging inspections, requesting information and documentation, issuing small reimbursement payments and conducting an examination of the property owner, alone do not amount to a forfeiture of contractual defenses. *Penna and Penna*, 510 F. Supp. 2d 207. Indeed, Sidon does not refute other caselaw cited by the R & R indicating that the lack of a reservation letter does not alone constitute waiver. *See, e.g., U.S. Liability Ins. Co. v. Winchester Fine Arts Services, Inc.* 337 F. Supp. 2d 435, 453 (S.D.N.Y. 2004) (insurer was not statutorily required to provide a reservation of rights letter and the failure to issue a reservation letter does not affects insurer's right to disclaim coverage).

Finally, the Court finds no undue prejudice from Travelers' actions in this matter to warrant estoppel. Travelers was notified of this suit on October 14, 2004. It conducted an investigation, as it had the right to do, and provided Southern Deli with a notice of disclaimer on November 9, 2004, a mere twenty-six days later. Such an expeditious exercise of Travelers' disclaimer right would not have unduly prejudiced Southern Deli. Moreover, any reliance by Southern Deli on Travelers' continued legal representation in this matter would have been misplaced after Southern Deli failed to respond to any of Travelers' offers of conditional representation. For these reasons and the reasons articulated in the R &R, the Court sees no basis for estoppel in this case.

Thus, the Court rejects Sidon's second and third objections.

## III. Southern Deli's Notice to Travelers

Sidon also suggests that whether Southern Deli provided timely notice to Travelers is a question of fact, which presumably should be left to a trier-of-fact. First, the R & R cogently analyzed the reasons why Southern Deli failed to notify Travelers of the accident "as soon as practicable" as required under the terms of the Travelers Policy. Namely, Southern Deli should have anticipated the possibility of claim under the Travelers Policy after it was aware that Zeygermakher was injured on Southern Deli's premise and required transportation from the scene by ambulance. *See* R & R 11-14. The Court adopts the R & R's reasoning in this regard. Second, as the R & R points out, courts have not been reluctant to issue summary judgment where the delay in notifying the insurer of an occurrence was unreasonable as a matter of law. *See* R & R 11 (collecting cases). Here, the accident occurred on September 11, 2003. Southern Deli did not notify Travelers of the occurrence until October 2004 – thirteen months after the injury and five month after learning that Zeygermakher was being represented by counsel. These delays fall well outside the range of reasonableness or practicability as a matter of law and the Court agrees that summary judgment is appropriate.

Accordingly, the Court rejects Sidon's fourth objection.

## IV. Injured Party's Notice to Travelers

Finally, Sidon asseverates that the Injured Party did all it could do to secure the identity of Southern Deli's insurance provider and, thus, the notice Southern Deli provided to Travelers should be deemed notice on behalf of the Injured Party. The R & R concluded that the Injured Party failed to diligently attempt to ascertain Travelers' identity and thus Sidon may not avoid the adverse consequences of Southern Deli's untimely notice to Travelers. In the R & R, Judge

7

Reyes found that Sidon's attempts to discern Southern Deli's insurer can be reduced to the following steps: one letter to Southern Deli on October 14, 2003, one phone call to Southern Deli on May 14, 2004, and another letter memorializing the phone call made on the same day. The R & R found that these two attempts over a six and one-half month period to be insufficiently diligent to excuse the lack of notice to the Insurer.

In his objections, Sidon contends that a further letter was sent to Arvik Properties, the owners of the building in which Southern Deli was located, on October 27, 2003, requesting the insurer's identity. Whether this letter was properly placed in the record, the addition of one letter to the Insured's *landlord* would not alter the reasonable diligence calculus here. The Court agrees that two, or even three, attempts to ascertain Southern Deli's insurer over a period of nearly seven months even "generously stretched, cannot excuse such a chronology of inactivity." *Richter v. Fireman's Fund Am. Ins. Co.*, 277 N.Y.S.2d 737, 737 (N.Y. App. Div. 1967).

The Court also finds unavailing Sidon's attempt to distinguish *Richter* based on the fact that *Richter* involved an automobile accident and it is much easier to ascertain the identity of automobile insurance. The *Richter* decision did not rely upon the ease of which the injured party could have succeeded in ascertaining the insurer's identity, but on the feebleness of the actions by the injured party and the inexplicable delay between the injured party's attempts to procure the necessary information. Here, while it might have been more difficult to identify Southern Deli's insurer, surely more could have been done. To send one letter to the Insured and one letter to the Insured's landlord, and then to wait nearly seven months to re-initiate contact with the Insured about its insurance carrier clearly displays a lack of diligence by Sidon.

Sidon also challenges the R & R's reliance on *Steinberg v. Hermitage Ins. Co*, 809 N.Y.S.2d 569, 569 (N.Y. App. Div. 2006) because the injured party in that case did not initiate

8

an investigation into the identity of the insurer for thirteen months. While the exact facts of *Steinberg* may be distinguishable from the instant case, its central tenet that a five-month gap of inactivity precludes a finding of diligence is still applicable to the present case. Here, Sidon waited nearly seven-months before taking any additional steps to identify Southern Deli's insurer. Such inactivity is surely not the hallmark of diligence.

Accordingly, the Court rejects Sidon's fifth objection to the R & R.

## CONCLUSION

For the foregoing reasons, the Court adopts the R & R of Magistrate Judge Reyes. Plaintiff Travelers' motion for summary judgment is hereby granted and defendant Sidon's cross-motion for summary judgment is denied.

It is further declared,

1. That Southern Deli breached its obligation under the Travelers Policy by failing to notify Travelers as soon as practicable of the occurrence of Mr. Zeygermakher's accident;

2. That Travelers has no obligation to defend or indemnify Southern Deli under the Travelers Policy, including no obligation to defend or indemnify Southern Deli for the matters raised in the Zeygermakher Lawsuit and no liability or obligation to Southern Deli or to pay or satisfy any damages awards, Judgments or other costs or fees entered against Southern Deli in the Zeygermakher Lawsuit;

9

3. That Travelers owes no duty or obligation to Defendant Elijha Sidon individually and as the Administrator of the Estate of Yuri Zeygermakher to pay, satisfy or otherwise be liable for the Judgment entered against Southern Deli in the Zeygermakher Lawsuit.

**SO ORDERED.**

                                                  s/ SLT
                                          / SANDRA L. TOWNES
                                          United States District Judge

Dated: March 24, 2010
Brooklyn, New York